## YALE HOOK & EYE CO. v. WALDES KOH–I–NOOR, Inc.

### No. 105.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1934.

Briesen & Schrenk, of New York City (Hans v. Briesen, of New York City, of counsel), for appellant.

Harry B. Rook, of Newark, N. J., for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This appeal arises upon claim 3 of a patent (No. 1,779,193) issued to David Silberman on October 21, 1930, for a garment fastener consisting of an eyelet, embedded in and stitched to a tape to form one member of a series of hooks and eyes, used upon women's clothes. The patent was interposed as a counterclaim to a suit on three patents for devices of similar kind, owned by the plaintiff, upon which it got an injunction. The court dismissed the counterclaim, holding the defendant's patent invalid. The art had long abandoned the old practice of selling hooks and eyes to be sewn separately upon the garment. In its place it had substituted two tapes, to one of which the eyes were affixed, and to the other, the hooks. These tapes could then be sewn directly to opposing edges of the garment, so as themselves to form the edges. The obvious convenience of this had made it the standard method. The patent related only to that tape to which the eyes are sewn, and disclosed the following device: The tape is once folded to form a pocket; each raw edge being then folded in upon itself, thus making four plies. A hole is then made in two adjacent plies, through which there passes a circular eyelet of tube-like form, with flanged edges. These edges are crimped outwardly, so as to grip the two plies and hold the eyelet in place. This, however, would not be firm enough; and for this reason the whole four plies are stitched together, longitudinally of the tape. When the stitching reaches an eyelet, it passes around the crimped edge, sewing it firmly to all four plies; the result being to offer the eyelet, stoutly fastened to the tape, as an opening into the pocket for the bill of the hook. If desired, a separate covering piece may be added, leaving exposed only enough of the eyelet to allow the bill of the hook to enter. The invention got substantial recognition at once upon its appearance in the year 1930, and the question is, whether the art had progressed so near to it as to leave no room for invention.

Long ago, as early as 1875 (Ulman, No. 161,841) eyelets had been crimped upon an edge of the fabric; and eyelet tapes were disclosed in later patents, Pretty, 362,995 (1887); Smith & Malnight, 750,234 (1904); Scheinman, 1,118,115 (1914), in some of which the eyelet passed through two plies of the tape and was crimped upon both. This structure was not, however, firm enough to stand the strains; the eyelets would fall out. Roseman, the plaintiff's inventor, made a new approach in four patents. They are the especial reliance of the plaintiff to defeat the patent, all being earlier art. We briefly describe each in the order of its application. In the first (1,677,903), applied for on July 1, 1926, the eye tape was in four plies so arranged as to form a continuous pocket into which the bills of the hooks could slip. A core of wire or twisted fabric ran longitudinally of the

tape, embraced by two of the plies and designed to reinforce it against the pull of the hooks. All the plies were sewed together and the stitching was periodically wound around the core to make openings for the admission of the hooks. The next application was filed on December 22, 1926. In it the continuous core was supplanted by a series of metal rectangles, embedded between plies of the tape, the outer edge of which received the bill of the hook. These rectangles were held in place by stitching, which sewed together the plies of the tape, and ran around the corners of the outer side of the rectangle to hold it in place. In the third application, filed April 13, 1927, the rectangles were somewhat modified in form, and the tape folded otherwise; but for our purposes it is not necessary to go into a detailed description. The last application, filed June 11, 1927, disclosed the same rectangle as in the second, but sewn into the tape at all four corners, to be doubly secure. Again, it is not necessary to go into details.

Thus, the defendant's patent differed from the art earlier than Roseman, in which eyelets ran through the plies and were crimped upon them, by reason of the stitching, which not only fastened the plies firmly into a single piece, but held the eyelets against the strains. This had not been done before. It differed from Roseman's four patents because the eyelets were run through and crimped upon two of the plies, instead of resting between them. This gave the security not only of the stitching but of the crimping, and it lessened the thickness of the tape by the plies through which the eyelet passed. The question is whether the combination of the old eyelet with the stitching was invention. We look at the patent as in line of descent from Pretty, Smith & Malnight and Scheinman, rather than from Roseman. These were three separate efforts, going back more than forty years before Silberman filed his application. Thus it cannot be said that the need for such tape was of recent origin. It now indeed appears to be an obvious device to reinforce these tapes by stitching running through four plies and surrounding the eyelet, but that was not done. Perhaps Silberman got the notion from Roseman's own patents with which he was familiar; we may concede as much, because it is clear that in the main he did not resort to Roseman, who throughout all his patents abandoned eyelets. Although himself a very prolific inventor—he had taken out forty patents—he did not suppose that the future lay in the eyelet. In its place he chose a rectangle which increased the thickness of the tape and depended wholly upon the stitching.

Silberman's departure was indeed no more than to combine the two; it was not a great invention, but it seems to us that it will pass. Going back to an old device as to which the art had shown some ingenuity, he supplemented it so as to make it more effective while retaining its advantages. We should hesitate to overthrow the presumptive validity of the patent by assuming that what had not occurred to others over so long a time was within the compass of routine imagination. We do not rely upon the cover strip, though claim 3 includes it; Roseman had disclosed it in earlier patents of his own, 1,171,982 and 1,623,361. But its addition does not injure the claim, though it may not help to establish its validity.

Decree reversed; decree for the defendant on claim 3.